751 So.2d 108 (2000)
Christopher S. OLSEN, Appellant,
v.
STATE of Florida, Appellee.
No. 97-02709.
District Court of Appeal of Florida, Second District.
January 5, 2000.
Rehearing Denied February 10, 2000.
*109 Steven L. Seliger, of Garcia and Seliger, Quincy, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patricia E. Davenport, Assistant Attorney General, Tampa, for Appellee.
DAVIS, Judge.
Christopher Olsen ("Olsen") appeals his conviction for burglary, first-degree murder, and other related offenses stemming from a three-day criminal episode. Olsen raises five issues on appeal. We find three issues worthy of discussion, all of which relate to the burglary and murder convictions. First, Olsen contends that the trial court erred in denying his motions for judgment of acquittal for the burglary charge. Second, Olsen argues that the trial court erred in denying his motions for judgment of acquittal on the murder charge. Third, Olsen avers that trial court erred in excluding reverse Williams[1] rule evidence.
The State alleged that Olsen burglarized the home of Patricia Wilson and bludgeoned her to death with an axe handle. The State's case on the murder and burglary charges was wholly circumstantial. After reviewing the record, we reverse the burglary conviction, reduce the first-degree murder conviction to second-degree murder, and affirm the remaining convictions.
Patricia Wilson and her husband, Harvey, ran an outdoor amusement business. They routinely traveled to several state fairs and carnivals. From time to time, the Wilsons employed Olsen to assist them in the operation of the business. During the off-season, the Wilsons would occasionally employ Olsen and others to help repair the attractions at their home in Florida.
In early May 1996, Harvey Wilson traveled out of state at the start of the season to run the business. Patricia Wilson remained at the home awaiting the completion of repairs to one of the trucks used to haul the attractions. The Wilsons agreed, as they had in the past, to hire Olsen for the season. Olsen agreed to stay in Florida with Patricia Wilson and drive the truck when the repairs were complete. Olsen slept on the couch or in a spare bedroom in the Wilsons' home.
Pamela Hoffman, the Wilsons' daughter, attempted to reach her mother by telephone several times on Saturday, May 18, but no one answered. On Sunday, May 19, Hoffman visited the home on two separate occasions. On each visit, she discovered the back door had been left unlocked. Although she conducted a quick search of the home each time, she did not enter the master bedroom. She locked the back door after departing the second time on Sunday.
On Monday, May 20, Hoffman returned to her parents' home. She entered by using her key. She searched the home and entered the master bedroom. She *110 found her mother's body on the bed, partially concealed by a pile of bedding.
Hoffman advised the police that Olsen had been staying in the home and that the Wilsons had given Olsen permission to use their pickup truck. The police found Olsen at a local shopping center that same afternoon. Olsen attempted to flee, and his conduct resulted in several of the charges below.

Burglary Conviction
Olsen argues that the trial court erred in failing to grant his motion for judgment of acquittal on the burglary charge. We agree. A burglary is defined as "entering or remaining in a structure or conveyance with the intent to commit an offense therein." Britton v. State, 604 So.2d 1288, 1290 (Fla. 2d DCA 1992). The State's evidence showed that Olsen stayed in the Wilsons' home as an invitee. On the other hand, Olsen admitted stealing several items from the Wilsons' home. The pivotal issue is whether the State presented sufficient evidence that Wilson withdrew her consent for Olsen to remain within the house. See Marquez v. State, 721 So.2d 1206, 1207 (Fla. 3d DCA 1998).
The State argues that Wilson implicitly withdrew her consent for Olsen to remain within the house as soon as she became aware that he was committing, or had committed, a crime. However, there must be some evidence, beyond the mere fact that a crime occurred, upon which the jury can reasonably infer that Patricia Wilson withdrew her consent. See id. at 1208.
When a defendant moves for a judgment of acquittal at the close of the State's case, the only issue is whether the State has presented sufficient evidence to establish a prima facie case. In viewing the State's evidence, all reasonable inferences of that evidence are drawn in favor of the State.
Leonard v. State, 731 So.2d 712, 717 n. 2 (Fla. 2d DCA 1999) (citing Williams v. State, 511 So.2d 740 (Fla. 5th DCA 1987)). The State failed to present prima facie evidence of burglary, and the trial court should have granted Olsen's motion for judgment of acquittal on that charge at the conclusion of the State's case.

Murder Conviction
The State argued for a first-degree murder conviction on theories of premeditation and/or felony murder. Because we find that the State presented insufficient evidence to support the burglary conviction, or evidence to support any other theory for felony murder, the first-degree murder conviction cannot stand on a theory of felony murder.
After the State rested its case, Olsen moved for a judgment of acquittal. The trial court denied the motion. We conclude the State presented prima facie evidence that Olsen killed Patricia Wilson, but did not present prima facie evidence of premeditation.
Olsen resided in the Wilsons' home. Olsen stole Patricia Wilson's check book and passed three forged checks on her account. Olsen stole several items of personal property from the Wilson home and pawned them. At least one of the items, a television set, came from the very room where Patricia Wilson was murdered. The police found the remote for this television set on the bed with the body. The police also found a VCR, which was normally kept in the bedroom, in the kitchen with Olsen's fingerprints on the underside. Again, police investigators found the remote to this unit in the bedroom, on the floor.
There were no signs of forced entry. Although Hoffman testified that someone left the door to the residence unlocked, there were burglar bars on the outside of the home. The police linked all the items stolen from the home to Olsen. No other items were discovered missing. Finally, Olsen took extreme measures in his attempts to flee from police custody. These facts, and the reasonable inferences that can be drawn therefrom, establish a prima facie case for murder.
Although Olsen admitted to committing the thefts and forgeries, and admitted that he pawned several items for drug money, *111 he denied killing Patricia Wilson. Olsen presented witnesses and took the stand in his own defense, in an attempt to establish an alibi defense.
We agree with the trial court that the State introduced competent evidence inconsistent with Olsen's alibi theory. The State elicited testimony demonstrating that the alibi witnesses could not account for Olsen's whereabouts during the entirety of the time period in question.
The real issue is whether the State presented prima facie evidence of premeditation to support a case for first-degree murder. The State may prove pre-meditation by circumstantial evidence.
Evidence from which premeditation may be inferred includes the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.
Holton v. State, 573 So.2d 284, 289 (Fla. 1990) (quoting Larry v. State, 104 So.2d 352, 354 (Fla.1958)).
After reviewing the factors outlined in Holton, and comparing the instant case with Kirkland v. State, 684 So.2d 732 (Fla. 1996), we cannot sustain Olsen's first-degree murder conviction because the State failed to exclude a reasonable hypothesis that the homicide occurred by something other than premeditated design. As in Kirkland, the State presented no evidence that Olsen exhibited, mentioned, or even possessed an intent to kill at any time prior to the actual homicide. The State presented no witnesses to the events immediately preceding the homicide. The State introduced testimony that established that the axe handle was in the Wilsons' home prior to the murder and found in the home after the murder. However, there is no evidence as to whether the axe handle was on the porch or in the Wilsons' bedroom immediately prior to the murder. Hence, there is no evidence that Olsen took steps to procure the weapon in advance of the murder. The injuries, which included multiple wounds to the top and back of the head, do not support an inference of premeditation to the exclusion of other explanations.
We reverse the conviction for first-degree murder and direct the trial court to replace it with a conviction of second-degree murder.
When the appellate court determines that the evidence does not prove the offense for which the defendant was found guilty but does establish guilt of a lesser statutory degree of the offense or a lesser offense necessarily included in the offense charged, the appellate court shall reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense or for the lesser included offense.
§ 924.34, Fla. Stat. (1997).

Reverse Williams Rule
Olsen sought to show that someone else could have committed the burglary and killed Patricia Wilson. To this end, Olsen proffered evidence concerning thirty-four burglaries, six grand thefts, and thirteen petit thefts William Spencer Stanfield allegedly committed between August 22 and September 6, 1996. At the time of his arrest, Stanfield resided approximately a quarter mile from the Wilsons' home. Stanfield allegedly committed all his crimes within a quarter to half mile of the Wilsons' home. After reviewing the record, we cannot say that the trial court abused its discretion by excluding the proffered evidence.
The test for admissibility of similar-fact evidence is relevancy. When the purported relevancy of past crimes is to identify the perpetrator of the crime being tried, we have required a close similarity of facts, a unique or "fingerprint" type of information, for the evidence to be relevant. If a defendant's purpose is to shift suspicion from himself to another person, evidence of past criminal conduct of that other person should be of such nature that it would be admissible if that person were on trial for the present offense. *112 State v. Savino, 567 So.2d 892, 894 (Fla. 1990) (citations omitted). Unlike the Stanfield crimes, a murder took place in the instant case. The State pointed out that Stanfield fled when confronted by one of his victims. Thus, the Stanfield crimes do not exhibit the same modus operandi as the crime in the instant case. We also note that the windows of the Wilsons' house were covered with burglar bars, which would have likely deterred the casual burglar. There was no evidence that a burglar forcibly entered the house. Nor is there any evidence of theft of items not attributable to Olsen. Presumably, Patricia Wilson either left the door unlocked for her murderer, or she admitted the murderer into her residence.

Remaining Issues
We have reviewed the remaining issues Olsen raises on appeal and affirm without further comment. We remand this case for re-sentencing consistent with the findings herein.
Affirmed in part, reversed in part, and remanded with directions.
FULMER, A.C.J., and WHATLEY, J., Concur.
NOTES
[1] See Williams v. State, 110 So.2d 654 (Fla. 1959)